**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

AMERICAN STANDARD, INC.,

      Plaintiff,

vs.                                        Case No. 3:06-cv-893-J-32MCR

CURTIS J. HUMPHREY,

      Defendant.

_____

**ORDER[1]**

This case is before the court on Plaintiff American Standard's Motion for Summary Judgment (Doc. 29), Defendant Curtis Humphrey's Motion for Summary Judgment (Doc. 40) and both parties' responses and replys thereto (Docs. 41, 42, 47 & 51.)  Also before the Court is Defendant's Motion to Exclude Evidence of Compensatory Damages (Doc. 45) and Plaintiff's response thereto (Doc. 48.)

**I. Background**

Trane is a business of American Standard, Inc.  (Doc. 30-2 ¶ 2.)  Trane's business is "among other things, selling residential and commercial air conditioning units and parts for those units, and related HVAC supplies." (Id.)  Curtis Humphrey

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

worked as Trane's Jacksonville District Manager for over 15 years. (Doc. 38-2 at 15.) In that position, Humphrey was a high level employee, responsible for the management of Trane's Jacksonville commercial sales business. (Id. at 16.) It is undisputed that Humphrey possessed knowledge that would be useful to Trane's competitors, including information on Trane's cost structure. (Doc. 37-2 at 7; Doc. 38-3 at 7-8.)

In January of 2006, Trane announced its decision to consolidate the Orlando and Jacksonville districts. (Doc. 30-2 at ¶ 3.) Management selected another employee as district manager for the consolidated district, eliminating Humphrey's position with Trane. (Id. at ¶ 4; Doc. 38-3 at 9.) Upon notifying Humphrey of his termination, Trane offered him a severance package including a one-time payment of $90,000. (Doc. 29-2.) This package was conditioned on Humphrey entering into non-compete and non-solicitation agreements, reading, in pertinent part:

> For a period of twelve months after your Termination Date, you shall not directly or indirectly, engage in or have any ownership interest in or financial participation in, or be employed by, or offer services to, the same or similar business as the Company or which competes in any way with the business conducted by the Company, or become involved, affiliated or provide assistance with any business or person engaged in the same or similar business as the Company or which competes in any way with the business conducted by the Company as an Executive, shareholder, director, officer, agent, partner, member, investor, employee, consultant, independent contractor, joint venturer, or otherwise in the following counties in the state of Florida: Alachua, Bradford, Clay, Columbia, Dixie, Duval, Franklin, Gadsden, Gilchrist, Hamilton, Jefferson, Lafayette, Lake, Leon, Levy, Liberty, Madison, Marion, Nassau, Putnam, Saint Johns, Suwannee, Taylor, Union, and

>> Wakulla.  You further agree that you will advise any prospective employer of this covenant
>>
>> You agree that for a period of twelve months after your employment termination you shall not directly or indirectly solicit any employee of the Company or its affiliates to terminate his or her employment.

(Id. at 4.)  Humphrey subsequently agreed to these terms and executed the agreement.  (Id.; Doc. 38-3 at 13.)

On March 7, 2006, BMB Enterprises, Inc. filed Articles of Incorporation with the Florida Secretary of State.  (Doc. 29-6 at 1.)  BMB is a wholesale distributor of filtration products and HVAC supplies.  (Doc. 35-2 at 3.)  Former Trane employees Butch Lee, Mitch Morris, and Brandon Davis are the officers and directors of BMB.  (Doc. 29-6 at 2.)  Humphrey's wife, Catherine, was listed as President.  (Id. at 23.)  BMB's corporate records indicate that Lee, Morris, Davis, and Catherine Humphrey each own 25% of the company, and their deposition testimony indicates that the company operates as an equal partnership.  (Id. at 25; Doc. 32-2 at 13.)  BMB has seven employees, including Curtis Humphrey, who is employed as a "Customer Service Representative for Filtration."  (Id.; Doc. 35-2 at 4.)

**II. Legal Standard**

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted).  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

### III. Discussion

Plaintiff's claims focus on two theories of recovery: (1) Humphrey was a part owner, investor, and/or employee of a competing business, thereby violating the non-compete provision, and (2) Humphrey solicited Trane employees Lee, Morris, and Davis to join him in forming BMB, thereby violating the non-solicitation provision. (Doc. 1 ¶ 17-18.)  Both parties are seeking summary judgment on the non-compete claim, while only Defendant is seeking summary judgment on the non-solicitation claim.

#### A. The Non-compete Provision

Plaintiff asserts that summary judgment should be granted because Humphrey has clearly violated his non-compete agreement with Trane through his involvement

with BMB. (Doc. 29 at 22.) Defendant counters that Plaintiff has failed to show any actual interference with Plaintiff's business. (Doc. 40 at 3.) Florida's unfair competition statute is codified at Section 542.35, Florida Statutes. That statute does provide for the enforcement of contracts restricting or prohibiting competition, within limits: "A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." Fla. Stat. § 542.335 (2007). However, this case is unusual because the period Humphrey was restrained from competition has since expired, and Plaintiff is apparently not seeking any injunctive relief. (Doc. 42 at 13.) Unlike most Florida cases in this area, where courts look to the threat of future harm and the probability of irreparable injury, this Court is required instead to look back and determine whether the non-compete was in fact breached during the twelve months it was in force.[2]

As Plaintiff points out, Humphrey's agreement prohibited him from becoming associated with any company in the same or similar business as Trane, or any business that competes with Trane. (Doc. 29 at 21.) Even drawing the inference in Humphrey's favor that BMB is not a direct market competitor of Trane, there is enough evidence to submit this issue to the fact finder. Both companies are in the

---

[2] Thus, most of the precedents upon which the parties rely, which are in the preliminary injunction context, don't quite fit the situation here.

business of selling parts and filters for air conditioning units. (Doc. 30 ¶ 2; Doc. 29-6 at 3; Doc. 35-2 at 8.) And, like any market participant, Plaintiff likely has some legitimate business interests tied up in managers like Humphrey that would support a bargained for non-compete.

However, it is Plaintiff's burden to plead and prove that the restraint was reasonably necessary to protect its legitimate business interests. See Fla. Stat. § 542.335(1)(c) (2007). Here, reasonableness and Humphrey's actual role in BMB are very much in dispute, and should be resolved by the finder of fact at trial. See Whitby v. Infinity Radio Inc., 951 So.2d 890, 897 (Fla. Dist. Ct. App. 2007) ("Whether a non-compete covenant is reasonable or overly broad is a question of fact for the trial court"). It cannot be determined, as a matter of law, whether the broad prohibition in Humphrey's non-compete agreement was reasonably necessary to protect Plaintiff's legitimate business interests. Therefore, granting summary judgment for either party regarding the non-compete agreement would be inappropriate.

### B. The Non-Solicitation Provision

Defendant also claims that summary judgment should be entered against Plaintiff with regards to its non-solicitation claim because Plaintiff presented "no evidence" in support of that claim. While it is true that Plaintiff's witness presented few details regarding the nature and circumstances of the alleged solicitation, the absence of a "smoking gun" does not mandate summary judgment in favor of

Defendant. "Where the circumstantial evidence and reasonable inferences drawn therefrom create a genuine issue of material fact for trial, summary judgment is improper." CBS Broadcasting, Inc. v. EchoStar Communications Corp., 450 F.3d 505, 518 (11th Cir. 2006). When viewed in the light most favorable to Plaintiff, the circumstantial evidence in this case is not "based on speculation and conjecture," but rather it suggests that solicitation could have occurred. See id.

Plaintiff's Rule 30(b)(6) designee for the solicitation claim, Joe Kountzman, testified about the basis Plaintiff had for believing Humphrey solicited Trane employees to join BMB. Describing a meeting about the formation of BMB with Butch Lee, Kountzman said:

> I asked him, "What's the purpose of this company?" He says, "We were always talking about forming a company." I said, "Who?" He says, "Brandon, Mitch and Curtis . . .." I said, "Don't you think that's a conflict of interest?" He said, "No, because he has it set up so that his wife's name is there, and he's legally protected because there is no evidence on record that he has ownership or control or involvement in the company."

(Doc. 39-2 at 2.) Additionally, BMB, with Humphrey's wife serving as president, had already been incorporated prior to either Mr. Lee or Mr. Davis resigning from Trane, but after Humphrey had resigned his position (Doc. 33-2 at 9; Doc. 39-2 at 2). While circumstantial, these facts (and others) allow a reasonable inference that Humphrey improperly solicited Trane employees. Taken in the light most favorable to Plaintiff, these inferences create a question of material fact sufficient to survive Defendant's motion for summary judgment. However, the Court considers this claim to be weak

and will reconsider this issue at the Rule 50 stage.

Accordingly, and with due consideration, it is hereby

**ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. 29) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 40) is **DENIED**.

3. Defendant's Motion to Exclude Evidence of Compensatory Damages (Doc. 45) is **DEFERRED** and will be discussed at the final pretrial conference.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of October, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

jcd.
Copies to:
Counsel of Record